**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| AMERICAN NATIONAL LLOYDS INSURANCE COMPANY, | ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| INDY 500 ACQUISITIONS, LLC and GARNER PROPERTIES & MANAGEMENT INDY, LLC, and AMANDA MALONE, | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, AMERICAN NATIONAL LLOYDS INSURANCE COMPANY, by and through

its attorneys, JOHNSON & BELL, P.C., brings this Complaint for Declaratory Judgment pursuant

to 28 U.S.C. § 2201, et seq., and in support thereof states as follows:

## THE PARTIES

1.     At all times relevant, American National Lloyds Insurance Company ("ANLIC")

is an insurance company with its principal place of business at 1949 East Sunshine Street in

Springfield, Missouri.

2.     At all times relevant, ANLIC was licensed to do business in Indiana, and did in fact

issue insurance policies in the State of Indiana.

3.     Upon information and belief, Defendant Indy 500 Acquisitions, LLC ("Indy 500")

was a limited liability company organized under the laws of the state of Delaware with a principal

place of business in Michigan.

4.      Upon information and belief, Garner Properties & Management Indy, LLC ("Garner"), was a limited liability company organized under the laws of the state of Indiana with a principal place of business in Indiana.

5.      Upon information and belief, at all times relevant hereto, Amanda Malone was an individual domiciled in the State of Indiana.

## NATURE OF THE ACTION

6.      This Court has jurisdiction over the dispute between the parties based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1) and (2), as Plaintiff is a citizen of the state of Missouri and Defendants are not citizens of the same foreign state as Plaintiff.

7.      The claims of the underlying plaintiff, as described later in this Complaint, against Defendants involve an amount in controversy in excess of the jurisdictional limit of $75,000.00.

8.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claim occurred in the Southern District of Indiana.

9.      This Court has personal jurisdiction over Malone because she is a citizen of the state of Indiana.

10.     This Court has personal jurisdiction over Garner because it is a limited liability company organized under the laws of the State of Indiana and has a principal place of business in Indiana.

11.     This Court has personal jurisdiction over Indy 500 because it owned the property at issue, which is located at 67 Burke Avenue in Indianapolis in the State of Indiana.

12.     An actual and justiciable controversy exists between the parties with respect to the rights of the parties under a policy of liability insurance.

13.     In this action, ANLIC seeks a declaration that it has no duty to defend or indemnify Indy 500 and Garner in an underlying lawsuit filed by Amanda Malone against them, captioned *Amanda Malone v. Indy 500 Acquisitions LLC, and Garner Properties & Management Indy, LLC* ("underlying lawsuit"), Cause No. 49D05-2212-PL-043208, in the Superior Court of Marion County, Indiana. A true and accurate copy of the underlying complaint is incorporated by reference and attached hereto as **Exhibit A**.

## FACTS

14.     On December 15, 2022, Amanda Malone filed suit against Indy 500 Acquisitions, LLC and Garner Properties & Management Indy, LLC (collectively "Indy 500 Defendants").

15.     This matter arises out of a series of incidents which allegedly occurred between February 27, 2021 and May of 2022 at 67 Burke Avenue in Indianapolis, Indiana (hereinafter "the Property").

16.     In the underlying lawsuit, it is alleged that the plaintiff in the underlying action, Amanda Malone, was a tenant of the Indy 500 Defendants and rented 67 Burke Avenue in Indianapolis, Indiana.

17.     In the underlying lawsuit, it is alleged that Amanda Malone executed a lease with Garner on February 24, 2021, to rent the Property.

18.     In the underlying lawsuit, it is alleged that Amanda Malone, suffered damages arising from chronic defects that existed on the Property during her tenancy.

19.     In the underlying lawsuit, it is alleged that Indy 500 owned the Property and that Garner was acting as Indy 500's agent.

20.     In the underlying lawsuit, it is alleged that the Indy 500 Defendants represented to Malone that the Property was habitable and fit for immediate use and occupancy.

21.     In the underlying lawsuit, it is alleged that the Indy 500 Defendants represented to Malone that they were required to make all repairs and alterations to the Property.

22.     In the underlying lawsuit, it is alleged that the Indy 500 Defendants represented to Malone that they would comply with all applicable health and housing codes, including Sections 10-405 and 10-601 of the Code of the Health and Hospital Corporation of Marion County.

23.     In the underlying lawsuit, it is alleged that Malone was entitled to quiet enjoyment of the Property.

24.     In the underlying lawsuit, it is alleged that a number of material defects existed on the Property, which were hidden from Malone, including mold, a nearly-clogged septic system, leaking gas lines, damaged flooring, and defective appliances and fixtures.

25.     In the underlying lawsuit, it is alleged that the Indy 500 Defendants knew or should have known of the aforementioned defects and did not disclose said defects to Malone.

26.     In the underlying lawsuit, it is alleged that the Indy 500 Defendants did not act with reasonable promptness to repair these defects once notified of them.

27.     Malone seeks damages for payment of excessive rent, out-of-pocket expenses, physical, mental, and emotional distress, frustration, annoyance, sorry, anger, grief, embarrassment, discomfort, physical injuries, and "other damages" in an amount to be determined.

28.     Malone alleges claims for Breach of Lease (Count I), Breach of Implied Warranty of Habitability (Count II), Breach of Landlord-Tenant Relations Statute (Count III), and Breach of Covenant of Quiet Enjoyment (Count IV).

## THE ANLIC POLICIES

29.     ANLIC issued a policy of insurance to named insured, Indy 500 Acquisitions LLC, with a policy period of July 12, 2020 to July 12, 2021, Policy Number OSCESIN23. A copy of the 2020-2021 ANLIC policy is incorporated by reference and attached hereto as **Exhibit B.**

30.     The ANLIC policy was renewed for another term, running from July 12, 2021 to July 12, 2022, with identical language. A copy of the 2021-2022 ANLIC Policy is incorporated by reference and attached hereto as **Exhibit C.**

31.     The ANLIC Policy was cancelled on July 8, 2022, with the cancellation retroactively taking effect on February 24, 2022. Cancellation Notice, attached as **Exhibit D**.

32.     Collectively, the 2020-2021 and 2021-2022 ANLIC policies are referred to as the "the ANLIC Policies."

33.     The ANLIC Policies were Indiana insurance policies.

34.     The ANLIC Policies provide identical relevant provisions with respect to the matters at issue in this declaratory judgment action.

35.     The ANLIC Policies contain the following insuring agreement:

SECTION I – COVERAGES
COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. INSURING AGREEMENT

a. **We** will pay those sums that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. **We** may, at **our** discretion, investigate any **occurrence** and settle any claim or **suit** that may result. But:
(1) The amount **we** will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) **Our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to **bodily injury** and **property damage** only if:

(1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory;**
(2) The **bodily injury** or **property damage** occurs during the policy period; and
(3) Prior to the policy period, no **insured** listed under Paragraph 1. of Section II – Who Is An Insured and no **employee** authorized by **you** to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a listed **insured** or authorized **employee** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

36.    The ANLIC Policies contain the following exclusion for Expected or Intended

Injury:

**EXCLUSIONS:**

This insurance does not apply to:

a. **Expected or Intended Injury:**

**Bodily injury** or **property damage** expected or intended from the standpoint of the **insured.** This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

37.    The ANLIC Policies contain the following Pollution Exclusion:

f. **Pollution:**

(1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured.** However, this subparagraph does not apply to:

(i) **Bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) **Bodily injury** or **property damage** for which **you** may be held liable, if **you** are a contractor and the owner or lessee of such premises, site or location has been added to **your** policy as an additional **insured** with respect to **your** ongoing operations performed for that additional **insured** at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **insured,** other than that additional **insured;** or

(iii) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire;**

(b) At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any **insured;** or
(ii) Any person or organization for whom **you** may be legally responsible; or

(d) At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured,** contractor or subcontractor.

However, this subparagraph does not apply to:

(i) Bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This Exclusion does not apply if the bodily injury or property damage arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) Bodily injury or property damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) Bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire.

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

However, this paragraph does not apply to liability for damages because of property damage that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

38.    The ANLIC Policies contain the following insuring agreement:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. INSURING AGREEMENT:**

a. **We** will pay those sums that the **insured** becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply. **We** may, at **our** discretion, investigate any offense and settle any claim or **suit** that may result. But:

(1) The amount **we** will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) **Our** right and duty to defend end when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to personal and advertising injury caused by an offense arising out of your business but only if the offense was committed in the coverage territory during the policy period.

39. The ANLIC Policies contain the following exclusion for Conduct that Knowingly Violates the Rights of Another:

**2. EXCLUSIONS:**

This insurance does not apply to:

a. **Knowing Violation of Rights of Another:**

**Personal and advertising injury** caused by or at the direction of the **insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury.**

40. The ANLIC Policy contains the following exclusion for Breach of Contract:

f. **Breach of Contract:**

**Personal and advertising injury** arising out of a breach of contract, except an implied contract to use another's advertising idea in **your advertisement.**

41. The ANLIC Policy contains the following exclusion for Pollution:

m. **Pollution:**

**Personal and advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

42. The ANLIC Policy contains the following provision:

**SECTION II – WHO IS AN INSURED**

2. Each of the following is also an **insured:**
***

b.    Any person (other than **your employee** or **volunteer worker),** or any organization while acting as **your** real estate manager.

43.    The ANLIC Policy contains the following definition of Bodily Injury:

3. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

44.    The ANLIC Policy contains the following definition of Occurrence:

13. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

45.    The ANLIC Policy contains the following definition of Personal and Advertising

Injury:

14. **Personal and advertising injury** means injury, including consequential **bodily injury,** arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in **your advertisement;** or
g. Infringing upon another's copyright, trade dress or slogan in **your advertisement.**

46.    The ANLIC Policy contains the following definition of Pollutants:

15. **Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

47.    The ANLIC Policy contains the following definition of Property Damage:

17. **Property damage** means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

48.    The ANLIC Policy Contains the Following Punitive Damages Exclusion Endorsement:

PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that Punitive Damages are excluded from the Commercial General Liability Policy.
There is no coverage under this policy for claims of or indemnification for punitive or exemplary damages.
If a suit seeking both compensatory and punitive or exemplary damages shall have been brought against the insured for a claim falling within the coverage provided under the policy, we will afford a defense to such an action. We shall not have an obligation to pay any costs, interest, or damages attributable to punitive or exemplary damages.

49.    The ANLIC Policy Contains the Following Tenants Liability Exclusion Endorsement:

TENANTS LIABILITY EXCLUSION ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that Tenants Liability is excluded from the Commercial General Liability Policy.
There is no coverage for:
Liability or suits arising from Tenants or the acts of Tenants.

50.    Defendant Indy 500 submitted a claim under the ANLIC Policies seeking coverage in respect to the claims asserted in the underlying lawsuit.

**COUNT I – DECLARATORY JUDGMENT**
**NO COVERAGE**

51.    ANLIC adopts and realleges Paragraphs 1-50 as though fully set forth herein.

11

52.     An actual controversy exists as to whether, based upon the terms, definitions, declarations, endorsements, exclusions, conditions, and/or other policies language included in the ANLIC Policies at issue, the Indy 500 Defendants are entitled to insurance coverage over the claims assert against them in the underlying lawsuit.

53.     Upon information and belief, Amanda Malone was renting the Property from the Indy 500 Defendants.

54.     In the underlying lawsuit, Amanda Malone alleges that she was damaged in the form of excessive rent, out-of-pocket expenses, physical, mental, and emotional distress, frustration, annoyance, sorry, anger, grief, embarrassment, discomfort, physical injury, and "other damages in an amount to be determined.

55.     Malone did not suffer a "bodily injury" as defined by the ANLIC Policies.

56.     Malone did not own the Property.

57.     No property owned by Malone suffered any damage.

58.     Malone was not excluded from using any property that she owned.

59.     As such, Malone did not suffer "property damage" as defined by the ANLIC Policies.

60.     Malone did not suffer a personal or advertising injury as defined by the ANLIC Policies.

61.     As Malone did not suffer bodily injury, property damage, or a personal advertising injury, the Indy 500 Defendants have no coverage for or in connection with the claims made by Malone in the underlying case.

62.     Malone alleges that she was damaged by a gas leak on the Property and a clogged septic system.

63.     Any "bodily injury," "property damage," or "personal advertising injury" suffered by Malone due to a gas leak or a malfunctioning septic system is excluded from coverage under the Pollution Exclusions.

64.     A gas leak falls within the definition of "pollutant" under the ANLIC Policies.

65.     A threatened release of septic tank waste falls within the definition of "pollutant" under the policies.

66.     Malone alleges that the Indy 500 Defendants mislead her as to the conditions that existed on the Property at the time that she executed the lease and failed to remedy those conditions once discovered.

67.     This amounts to expected or intended conduct by the Indy 500 Defendants and a knowing violation of the rights of Malone.

68.     Any "bodily injury," or "property damage," suffered by Malone due to any expected or intended injury on the part of the Indy 500 Defendants to Malone is excluded from coverage under the Expected or Intended Injury exclusion.

69.     Any personal or advertising injury suffered by Malone arising from conduct undertaken by the Indy 500 Defendants that they knew would violate Malone's rights is excluded from coverage under the Knowing Violation of Rights of Another exclusion.

70.     Malone alleges that she had a lease with the Indy 500 Defendants.

71.     Counts I, II, and IV allege that the Indy 500 Defendants breached their lease with Malone.

72.     Count III depends upon the existence of a lease between the Indy 500 Defendants and Malone.

73.     As such, Counts I, II, III, and IV all allege some variation of breach of lease.

74.     Any personal or advertising injury suffered by Malone arising out of breach of lease is excluded from coverage under the Breach of Contract policy exclusion.

75.     Malone alleges that Garner was acting as Indy 500's agent.

76.     Garner was not acting as a "real estate" manager within the meaning of the ANLIC Policies.

77.     As such, Garner is excluded from the definition of an insured under the ANLIC Policies.

78.     Malone alleges that some of the conduct at issue occurred as late as May of 2022.

79.     The ANLIC Policy was cancelled, effective on February 24, 2022.

80.     As such, any injury suffered by Malone occurring after the Policy was cancelled on February 24, 2022 is excluded from coverage under the ANLIC Policies.

81.     To the extent that Malone's injuries were caused by the conduct of another tenant, Malone's claim is excluded from coverage under the Tenant Liability Exclusion Endorsement.

82.     Punitive and exemplary damages are excluded from coverage under the Punitive Damages Exclusion Endorsement.

83.     There are other terms and exclusions in the ANLIC Policies that apply to exclude Malone's claims in the underlying lawsuit from coverage by the ANLIC Policies.

84.     As set forth in the lawsuit by Malone, Malone's claims are not covered by the provisions and terms set forth in the ANLIC Policies.

85.     Accordingly, there is no coverage under the ANLIC Policies for the Indy 500 Acquisitions, LLC or Garner Properties & Management Indy, LLC for the claims asserted in the underlying lawsuit and, therefore, no duty on the part of ANLIC to defend Indy 500 Acquisitions,

LLC or Garner Properties & Management Indy, LLC in relation to the claims asserted in the underlying lawsuit.

86.    Under the terms, definitions, declarations, endorsements, exclusions, conditions, and/or other policy language in the Policy at issue, coverage is excluded for the loss described above.

87.    Plaintiff ANLIC reserves the right to amend and/or supplement the allegations with regard to coverage as this litigation progresses.

88.    By reason of the foregoing, an actual and justiciable controversy exists between the parties, which may be determined by a judgment or order of this Court, and pursuant to the terms of 28 U.S.C. § 2201, this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties to give such other and further relief as may be necessary to enforce its judgment.

WHEREFORE, the Plaintiff, AMERICAN NATIONAL LLOYDS INSURANCE COMPANY, requests that this Honorable Court enter judgment finding and declaring the rights of the parties as follows:

a.    No coverage is available under the 2020-2021 American National Lloyds Insurance Company Policy No. OSCESIN23 for Indy 500 Acquisitions, LLC with respect to the Underlying Complaint.

b.    No coverage is available under the 2020-2021 American National Lloyds Insurance Company Policy No. OSCESIN23 for Garner Properties & Management Indy, LLC with respect to the Underlying Complaint.

c.      No coverage is available under the 2021-2022 American National Lloyds Insurance Company Policy No. OSCESIN23 for Indy 500 Acquisitions, LLC with respect to the Underlying Complaint.

d.      No coverage is available under the 2021-2022 American National Lloyds Insurance Company Policy No. OSCESIN23 for Garner Properties & Management Indy, LLC with respect to the Underlying Complaint.

e.      For any and all other relief this court deems just and proper.

**COUNT II – DECLARATORY JUDGMENT**
**NO DUTY TO DEFEND OR INDEMNIFY**

89.      ANLIC adopts and realleges Paragraphs 1-50 as though fully set forth herein.

90.      An actual controversy exists as to whether, based upon the terms, definitions, declarations, endorsements, exclusions, conditions, and/or other policies language included in the ANLIC Policies at issue, ANLIC has an obligation to defend and indemnify the Indy 500 Defendants for the claims assert against them in the underlying lawsuit.

91.      Upon information and belief, Amanda Malone was renting the Property from the Indy 500 Defendants.

92.      In the underlying lawsuit, Amanda Malone alleges that she was damaged in the form of excessive rent, out-of-pocket expenses, physical, mental, and emotional distress, frustration, annoyance, sorry, anger, grief, embarrassment, discomfort, physical injury, and "other damages in an amount to be determined.

93.      Malone did not suffer a "bodily injury" as defined by the ANLIC Policies.

94.      Malone did not own the Property.

95.      No property owned by Malone suffered any damage.

96.      Malone was not excluded from using any property that she owned.

16

97.     As such, Malone did not suffer "property damage" as defined by the ANLIC Policies.

98.     Malone did not suffer a personal or advertising injury as defined by the ANLIC Policies.

99.     As Malone did not suffer bodily injury, property damage, or a personal advertising injury, ANLIC has no duty to defend or indemnify Indy 500 Defendants for or in connection with the claims made by Malone in the underlying case.

100.    Malone alleges that she was damaged by a gas leak on the Property and a clogged septic system.

101.    Any "bodily injury," "property damage," or "personal advertising injury" suffered by Malone due to a gas leak or a malfunctioning septic system is excluded from coverage under the Pollution Exclusions.

102.    A gas leak falls within the definition of "pollutant" under the ANLIC Policies.

103.    A threatened release of septic tank waste falls within the definition of "pollutant" under the policies.

104.    Malone alleges that the Indy 500 Defendants mislead her as to the conditions that existed on the Property at the time that she executed the lease and failed to remedy those conditions once discovered.

105.    This amounts to expected or intended conduct by the Indy 500 Defendants and a knowing violation of the rights of Malone.

106.    Any "bodily injury," or "property damage," suffered by Malone due to any expected or intended injury on the part of the Indy 500 Defendants to Malone is excluded from coverage under the Expected or Intended Injury exclusion.

107.    Any personal or advertising injury suffered by Malone arising from conduct undertaken by the Indy 500 Defendants that they knew would violate Malone's rights is excluded from coverage under the Knowing Violation of Rights of Another exclusion.

108.    Malone alleges that she had a lease with the Indy 500 Defendants.

109.    Counts I, II, and IV allege that the Indy 500 Defendants breached their lease with Malone.

110.    Count III depends upon the existence of a lease between the Indy 500 Defendants and Malone.

111.    As such, Counts I, II, III, and IV all allege some variation of breach of lease.

112.    Any personal or advertising injury suffered by Malone arising out of breach of lease is excluded from coverage under the Breach of Contract policy exclusion.

113.    Malone alleges that Garner was acting as Indy 500's agent.

114.    Garner was not acting as a "real estate" manager within the meaning of the ANLIC Policies.

115.    As such, Garner is excluded from the definition of an insured under the ANLIC Policies.

116.    Malone alleges that some of the conduct at issue occurred as late as May of 2022.

117.    The ANLIC Policy was cancelled, effective on February 24, 2022.

118.    As such, any injury suffered by Malone occurring after the Policy was cancelled on February 24, 2022 is excluded from coverage under the ANLIC Policies.

119.    To the extent that Malone's injuries were caused by the conduct of another tenant, Malone's claim is excluded from coverage under the Tenant Liability Exclusion Endorsement.

120.    Punitive and exemplary damages are excluded from coverage under the Punitive Damages Exclusion Endorsement.

121.    There are other terms and exclusions in the ANLIC Policies that apply to exclude Malone's claims in the underlying lawsuit from coverage by the ANLIC Policies.

122.    As set forth in the underlying lawsuit by Malone, ANLIC owes no duty to defend or indemnify the Indy 500 Defendants in the underlying lawsuit.

123.    Accordingly, there is no duty on the part of ANLIC to defend or indemnify Indy 500 Acquisitions, LLC or Garner Properties & Management Indy, LLC for the claims asserted in the underlying lawsuit.

124.    Under the terms, definitions, declarations, endorsements, exclusions, conditions, and/or other policy language in the Policy at issue, there is no duty to defend or indemnify the Indy 500 Defendants.

125.    Plaintiff ANLIC reserves the right to amend and/or supplement the allegations with regard to coverage as this litigation progresses.

126.    By reason of the foregoing, an actual and justiciable controversy exists between the parties, which may be determined by a judgment or order of this Court, and pursuant to the terms of 28 U.S.C. § 2201, this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein and to adjudicate the final rights of all parties to give such other and further relief as may be necessary to enforce its judgment.

WHEREFORE, the Plaintiff, AMERICAN NATIONAL LLOYDS INSURANCE COMPANY, requests that this Honorable Court enter judgment finding and declaring the rights of the parties as follows:

a.   American National Lloyds Insurance Company owes no duty to defend or indemnify Indy 500 Acquisitions, LLC.

b.   American National Lloyds Insurance Company owes no duty to defend or indemnify Garner Properties & Management Indy, LLC.

c.   For any and all other relief this court deems just and proper.

Respectfully submitted:

JOHNSON & BELL, LTD.

By:   */s/ Edward W. Hearn*
Edward W. Hearn, #18691-64
JOHNSON & BELL, P.C.
11041 Broadway
Crown Point, IN 46307
Phone: (219) 791-1900
Fax: (219) 791-1901
hearne@jbltd.com
Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 13th day of June, 2023, I electronically filed the foregoing document using this Court's CM/ECF system and this document was served on all parties through the Court's CM/ECF system.

*/s/Edward W. Hearn*